UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brenda Brazier,

      Plaintiff,

      v.                                                Civil Action No. 2:11-CV-28

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 11, 14)

      Plaintiff Brenda Brazier brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  Pending before the Court are Brazier's motion to reverse the Commissioner's decision (Doc. 11), and the Commissioner's motion to affirm the same (Doc. 14).

      For the reasons stated below, Brazier's motion is DENIED, and the Commissioner's motion is GRANTED.

## Background

      Brazier was forty-four years old on her alleged disability onset date of June 24, 2008.  (Administrative Record ("AR") 33, 117, 147.)  She attained a Bachelor of Science degree in 2004, and has received educational training as a paralegal.  (AR 33, 153.)  Brazier's job history consists of working as a waitress, a secretary, and a cashier.  (AR 33, 41, 148, 165-72.)

Brazier has a long history of back pain, including muscle spasms moving down to the buttocks and into the bilateral lower extremities. (AR 661.) On June 24, 2008, she claims that a back spasm caused her to fall, embedding glass in her left knee. (AR 34.) As a result, and also due to general back pain and negative effects from prescribed medications, she stopped working. (*Id.*) Brazier reports that she suffers from pain, including paralyzing spasms, every day, particularly when bending, stretching, sitting, walking, and typing. (AR 174, 178.) In addition, she reports that she suffers from depression and anxiety, and has difficulty "get[ting] along with" people. (AR 162; *see also* 161, 662, 745-46.) The record reflects that Brazier had an abusive and unstable childhood, and was homeless (living out of her car) at various times during the alleged disability period. (AR 556-58, 744-45.) She has two adult children, and her relationship with each of them is strained. (AR 557-58, 633, 688, 745.)

Brazier protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on June 27, 2008. (AR 117-27.) In her DIB application, she alleged that, starting on June 24, 2008, she was unable to work due to pain, neurological problems, sciatica, spasms, loss of feeling in her foot and leg, loss of use of her left foot, decreased vision in her left eye, and loss of strength in her left hand. (AR 147.) The application was denied initially and upon reconsideration, and Brazier timely requested an administrative hearing. (AR 47-63, 66.)

On June 14, 2010, Administrative Law Judge ("ALJ") Thomas Merrill conducted a hearing, at which Brazier appeared and testified, and was represented by counsel. (AR 29-46.) Additionally, vocational expert Cynthia Ward testified at the hearing. (AR 40-

2

45.) On September 13, 2010, the ALJ issued a decision finding that Brazier was not disabled under the Social Security Act from her alleged onset date of June 24, 2008 through the date of the decision. (AR 9-21.) A few months later, the Decision Review Board affirmed the ALJ's decision, rendering it the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Brazier filed the Complaint in this action on February 3, 2011. (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other

3

work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Merrill first determined that Brazier had not engaged in substantial gainful activity since her alleged onset date of June 24, 2008. (AR 12.) At step two, the ALJ found that Brazier had the following severe impairments: degenerative disc disease of the lumbar spine, myofascial pain, piriformis syndrome, and major depressive disorder. (*Id.*) At step three, the ALJ found that none of Brazier's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 12-13.)

Next, the ALJ determined that Brazier had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally perform postural activities other than climbing stairs, which she could perform frequently; and she had "some difficulties" getting along with others and "should be limited from intensive interaction with her supervisor, coworkers, and the public, but [could] handle routine interactions." (AR 14.) The ALJ further determined that Brazier could manage changes in the workplace and hazards from travel; had no significant limitations with understanding and remembering instructions; had sufficient concentration, persistence,

4

and pace to sustain two-hour blocks throughout the workday; and could handle "4+[-]step and low stress work activities." (*Id.*)  Based on this RFC and testimony from the VE, the ALJ concluded that Brazier was capable of performing her past relevant work as a cashier and a waitress.  (AR 19.)  Alternatively, the ALJ found that Brazier could perform other jobs existing in the national economy, including file clerk, survey worker, office helper, mail clerk, and office clerk.  (AR 19-20.)  The ALJ concluded that Brazier had not been under a disability from the alleged onset date of June 24, 2008 through the date of the decision.  (AR 20-21.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I.   Opinions of Dr. Alicia Jacobs

Brazier argues that the ALJ failed to properly evaluate the opinions of treating physician Dr. Alicia Jacobs.  Dr. Jacobs treated Brazier on a frequent basis from at least January 2006 through the date of the ALJ's decision, with a short break in treatment occurring just prior to December 2009.  (*See, e.g.,* AR 455-56, 503, 750, 784-86, 793-

6

800, 804, 828-29, 832, 835-40.)  During the alleged disability period, Dr. Jacobs made the following relevant opinions regarding Brazier:

- In an October 2008 "Mental Status Report," Dr. Jacobs opined that Brazier suffered from anxiety and depression, but that her behavior, memory, attention/concentration, and ability to relate were "OK," although she was "distractible."  (AR 555.)
- In a December 2008 treatment note, Dr. Jacobs opined that Brazier appeared "chronically ill," and was "able to work in a light duty capacity only."  (AR 606.)
- In an April 2010 "Medical Source Statement," Dr. Jacobs opined that, due to her "severe depressive symptoms," Brazier experienced "moderate" restrictions in activities of daily living, "moderate" difficulty maintaining social functioning, and difficulty completing tasks in a timely fashion.  (AR 726.)  She further opined that Brazier had "substantial loss of ability" in performing activities within a schedule, maintaining regular attendance, being punctual, and getting along with coworkers or peers.  (AR 727.)  On the other hand, Dr. Jacobs opined that Brazier had "less than substantial loss of ability" in maintaining concentration and attention for extended periods, maintaining regular attention for extended periods of two-hour segments, working in coordination with or proximity to others, and accepting instructions and responding appropriately to criticism from supervisors.  (*Id.*)

- In a July 2010 letter responding to Brazier's attorney's inquiries, Dr. Jacobs opined that Brazier had "severe/marked" difficulties in maintaining concentration, persistence, or pace.  (AR 836.)
- In a November 2010 "Medical Report for General Assistance," Dr. Jacobs opined that, due to Brazier's "chronic depression" and "chronic low back pain," which she "expect[ed] . . . to last" for a period of "3 months," Brazier was unable to work.  (AR 730.)

In his decision, the ALJ cited to and discussed each of these opinions, although he erroneously identified the author of the October 2008 opinion as someone other than Dr. Jacobs.  (*See* AR 17-18.)  The ALJ gave "great weight" to Dr. Jacobs' December 2008 opinion that Brazier could "work in a light duty capacity," stating that this opinion was consistent with the other evidence.  (AR 17.)  He gave "lesser weight" to Dr. Jacobs' later opinions, finding that they were "inconsisten[t]," and that the Doctor's changing opinion of Brazier's status was "not reflected in treatment notes documenting deterioration in [Brazier's] condition."  (AR 18.)

For the following reasons, the Court finds that the ALJ properly applied the treating physician rule with respect to Dr. Jacobs' opinions.

### A.     Decision Not to Give Controlling Weight to Dr. Jacobs' Opinions

Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  20 C.F.R. §

404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). Applied here, Dr. Jacobs' opinions are not entitled to controlling weight because they are not supported by citation to medically acceptable clinical and laboratory diagnostic techniques. Rather, for example, when asked to state the medical reasons for her April 2010 opinion that Brazier had "substantial loss of ability" in maintaining attendance and getting along with coworkers, among other things, Dr. Jacobs stated merely that Brazier had "severe depressive symptoms – uncontrolled." (AR 727.) Not only does this explanation fail to reference medically acceptable clinical and laboratory diagnostic techniques, but it also seems to conflict with Dr. Jacobs' opinion that Brazier was only "moderate[ly]" restricted in maintaining social functioning. (AR 726.)

There are two other unexplained inconsistencies among Dr. Jacobs' opinions. First, Dr. Jacobs opined in December 2008 that Brazier was able to perform light work (AR 606); but then approximately two years later, with little explanation, the Doctor opined that Brazier was *un*able to work[1] (AR 730). And second, Dr. Jacobs opined in April 2010 that Brazier had less than substantial loss of ability to maintain concentration, persistence, or pace (AR 727); but then less than three months later, again with little explanation, the Doctor opined that Brazier had *marked* difficulties in maintaining concentration, persistence, or pace (AR 836). The ALJ accurately found that the record – including Dr. Jacobs' own treatment notes – does not support such a deterioration in Brazier's general ability to work or particular ability to maintain concentration,

---

[1] Dr. Jacobs opined only that Brazier was unable to work for a period of "3 months." (AR 730.) It is unclear why Dr. Jacobs limited her opinion to three months, while at the same time inconsistently opining that Brazier's depression and low back pain were "chronic," which would imply no end date. (*Id.*)

9

persistence, or pace over this time period; and Dr. Jacobs does not explain the change in her opinions either in the opinions themselves or elsewhere.

Other medical evidence supports the ALJ's decision not to afford controlling weight to Dr. Jacobs' opinions regarding Brazier's limited ability to concentrate. For example, when Brazier was admitted to the hospital in March 2009, an Emergency Room physician's assistant noted that, although she was non-communicative, depressed, and withdrawn, her cognition, thought processes, and thought content were "normal." (AR 651.) And treating physician Dr. Magdalena Naylor noted in a "Chronic Pain Evaluation" that, although Brazier appeared tired, sluggish, and "generally apathetic," she "showed average concentration, average fund of knowledge, with average reasoning and fair insight." (AR 745.)

Likewise, agency consultant Dr. Rae Anne Barry observed in an examination that Brazier's "[m]emory and concentration [we]re adequate." (AR 563.) Non-examining agency consultant Dr. William Farrell stated that Brazier's depression "can affect her concentration and pace," but ultimately determined that she had "sufficient concentration persistence and pace" to perform low-stress work activities. (AR 585.) Brazier contends that Dr. Farrell's opinion is worth little because he reviewed the record approximately two years before the ALJ made his decision and before the submission of more than 100 pages of medical evidence. (*See* Doc. 15 at 7-8.) The point is well-taken; however, the ALJ explicitly recognized this deficiency and properly explained his decision to nonetheless give "great weight" to Dr. Farrell's opinion: "Although additional evidence was later received into the record, *Dr. Farrell's opinion remains consistent with these*

10

*further treatment notes.* [Brazier] did not submit evidence documenting deterioration in her mental condition." (AR 17 (emphasis added).) Although in many cases it is most appropriate for ALJs to give less weight to the opinions of non-examining agency consultants than to those of treating physicians, this determination must be made on a case-by-case basis, and the regulations clearly permit the opinions of non-examining agency consultants to override those of treating sources, when (as here) the former are supported by evidence in the record and the latter are not. *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); 20 C.F.R. § 404.1527(f)(2)(ii) ("State agency . . . psychological consultants . . . are highly qualified . . . medical specialists who are also experts in Social Security disability evaluation . . . .").

> B. **Consideration of the Regulatory Factors and Reasons Provided in Support of the Weight Afforded to Dr. Jacobs' Opinions**

Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to *some* weight because a treating physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(d)(2). Under the Commissioner's regulations, when, as here, the ALJ decides to afford less than controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining how much weight is appropriate: "(1) the length of the treatment relationship and the

11

frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the treating physician presents relevant evidence to support an opinion, particularly medical signs and laboratory findings; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist in the area relating to her opinion; and (6) other factors which tend to support or contradict the opinion." *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6)). After considering these factors, the ALJ must "give good reasons" for the weight afforded to the treating source's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

Here, in determining what weight to give Dr. Jacobs' opinions, the ALJ considered the relevant factors and gave "good reasons" for the weight afforded thereto. Specifically, the ALJ acknowledged that Dr. Jacobs and Brazier had a treatment relationship (AR 18 ("Dr. Jacobs has a treating relationship with [Brazier]")), and discussed in detail Dr. Jacobs' treatment notes and examination findings, specifically noting dates of treatment. (AR 15-17.) Clearly, the ALJ was aware that Brazier and Dr. Jacobs had an extensive and lengthy treatment relationship. Moreover, the ALJ properly reasoned that no treatment notes document a change in Brazier's condition such that she had merely "less than a substantial loss of ability" to maintain attention and concentration in April 2010 (AR 727) and "marked" difficulties in maintaining attention and concentration only approximately two months later (AR 836), as opined by Dr. Jacobs. (AR 18.) Furthermore, the ALJ defended his decision to afford only "some weight" to

Dr. Jacobs' opinions by stating that, although the Doctor's opinion that Brazier was able to do light work was "consistent with and supported by the evidence of record" (AR 17-18), her later opinions that Brazier had severe/marked difficulties in maintaining concentration, persistence, and pace were "inconsisten[t]." (AR 18.)  Although it is unclear whether the ALJ meant "inconsistent *with Dr. Jacobs' own other opinions and treatment notes*" or "inconsistent *with the record as a whole*," the distinction is inconsequential given that substantial evidence (discussed above) supports both findings and the ALJ clearly was aware of this evidence, as he described it in his decision.

Substantial evidence also supports the ALJ's implicit decision to afford limited weight to Dr. Jacobs' April 2010 opinion that Brazier had "substantial loss of ability" in performing activities within a schedule, maintaining regular attendance, being punctual, and getting along with coworkers or peers.  (AR 727.)  For example, in the same opinion, Dr. Jacobs opined that Brazier was only "moderate[ly]" restricted in maintaining social functioning.  (AR 726.)  And in October 2008, Dr. Jacobs opined that Brazier's behavior, memory, and ability to relate were "OK."  (AR 555.)  Additionally, Brazier's symptoms were frequently described by medical providers, including Dr. Jacobs, as being situational, arising in reaction to stressors such as lack of housing, financial problems, conflicts with her children, and the death of her boyfriend.  (*See, e.g.,* AR 463, 479, 483, 643, 703, 710.)  There is also substantial medical evidence, noted in the ALJ's decision, suggesting that Brazier exaggerated her symptoms to medical providers.  (*See* AR 17 ("[Brazier's] presentation at office visits and poor effort put forth at evaluations, along with notes regarding exaggerated symptom[-]reporting, cut against the strength of [her]

13

allegations [of disabling pain and fatigue]."); *see also* AR 631, 643, 663, 675, 685, 744, 748-49.)  Also noteworthy (and mentioned in Footnote 1, above), in November 2010, when Dr. Jacobs opined that Brazier's depression and low back pain caused her to be "unable to work," the Doctor limited such opinion to a three-month period, even though the form on which the opinion was provided allowed for a finding that Brazier's "illness or injury" would last for up to "1 year" and provided a line on which the Doctor could have stated that Brazier's condition would prevent her from working for longer than a year.  (AR 730.)

      Given this evidence, as well as the ALJ's stated reasons for giving "lesser weight" to Dr. Jacobs' later opinions, the Court is assured that "the substance of the treating physician rule was not traversed."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (where it is unclear on the face of the ALJ's opinion whether he considered the applicability of the treating physician rule, the court must "undertake[] a searching review of the record to assure [the claimant] received the rule's procedural advantages"); *see Klodzinski v. Astrue*, 274 F. App'x 72, 74 (2d Cir. 2008) (even in the absence of a detailed explanation, remand is not warranted if "the ALJ considered and rejected [the opinion of a treating physician] for reasons that are appropriate under the regulations and evident from the record and the ALJ's findings").

      **C.**    **Duty to Develop Record**

      Brazier argues that, if the ALJ perceived inconsistencies in Dr. Jacobs' opinions, he should have contacted the Doctor to attempt to resolve them.  (*See* Doc. 11-2 at 11-12.)  However, "where there are no obvious gaps in the administrative record, and where

the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). The Second Circuit recently explained that, where "the record evidence [i]s adequate to permit the ALJ to make a disability determination, . . . the ALJ [is not] obligated *sua sponte* to recontact the treating physicians." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010).

In this case, the ALJ had before him a complete medical record, as well as opinions from multiple treating and consulting physicians. The ALJ described this medical record in some detail, and explicitly cited to and considered the medical opinions in his decision. Although Dr. Jacobs' opinions contain inconsistencies, as discussed above, Brazier has not adequately explained how the Doctor would reconcile them if contacted. In any event, even if the ALJ had contacted Dr. Jacobs in an attempt to explain the inconsistencies among her opinions, it is unlikely that the Doctor's response would have resulted in an alteration of the ALJ's decision, considering that (a) the ALJ thoroughly considered the evidence as a whole, and (b) substantial evidence supports the ALJ's decision to give "lesser weight" to Dr. Jacobs' opinions, as discussed above.

## II. Harmless Errors

Brazier asserts that the matter should be remanded as a result of three errors made in the ALJ's decision. She claims that these errors, individually or in combination, were not harmless because they formed the basis of the ALJ's decision to afford minimal weight to Dr. Jacobs' later opinions. The Court disagrees, finding that, even if the errors

were corrected on remand, the ALJ's decision would remain unchanged. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

First, in describing one of Dr. Jacobs' opinions, the ALJ erroneously used the word "attendance" instead of "attention." (AR 18.) Specifically, the ALJ stated: "[Dr. Jacobs] noted that [Brazier] could maintain concentration and *attendance* for approximately 2-hour periods, but could not necessarily perform activities within a schedule or maintain attendance, and would have difficulty getting along with coworkers or peers (Exhibit 22F)." (*Id.* (emphasis added).) In fact, the record which the ALJ was describing states, in relevant part, that Brazier had less than substantial loss of ability in maintaining "concentration and *attention* for extended periods" including "approximately 2-hour segments," and in maintaining "regular *attention for extended periods of 2-hour segments*." (AR 727 (emphasis added).) Second, the ALJ erred in stating that, in Dr. Jacobs' November 2010 report, the Doctor indicated that Brazier "was *not unable* to work at her usual occupation (Exhibit 23F)." (AR 18 (emphasis added).) In fact, Dr. Jacobs opined in that report that Brazier was "*unable* to work at . . . her usual occupation" (AR 730 (emphasis added)), the opposite of what the ALJ recorded. These errors are clearly typographical, as in both cases, the ALJ explicitly cited to the records that he was describing and thus there is no uncertainty with respect to what he meant to say. Moreover, the propriety of the ALJ's determination that Dr. Jacobs' opinions were

entitled to "lesser weight" due to inconsistencies contained therein and with other evidence of record is unaffected by these errors.

Finally, the ALJ inaccurately referred to a report prepared by Dr. Jacobs as being prepared by "Alicia Jaersson of Colchester Family Practice." (AR 18.) The ALJ gave the report "some weight," in part based on his finding that "it is not clear whether the person submitting the form is an acceptable medical source." (*Id.*) Again, this error is harmless, considering that the ALJ nonetheless considered the report on its merits, stating that it "is not supported by or consistent with . . . the record in general." (*Id.*) Moreover, the report is largely irrelevant to the ALJ's ultimate decision because it merely states that Brazier was depressed and anxious without providing any supporting information, including either the severity of these conditions or how they affected Brazier's ability to function. (AR 555.)

## Conclusion

As discussed above, although ALJ Merrill made several typographical or factual errors in his decision, he conducted a thorough analysis of Brazier's claim, including discussion of the extensive medical opinion evidence. In addition, the ALJ cited substantial evidence to support his findings, including his decision to afford "lesser weight" to the later opinions of treating physician Dr. Alicia Jacobs. Accordingly, Brazier's motion (Doc. 11) is DENIED; the Commissioner's motion (Doc. 14) is GRANTED; and the decision of the Commissioner is hereby AFFIRMED.

18

Dated at Burlington, in the District of Vermont, this 26th day of October, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge